IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Corporate Excise Tax

| | | |
|---|---|---|
| ELECTRONICS INTERNATIONAL, INC., | ) | |
| an Oregon corporation, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 120820C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff has appealed Defendant's Notice of Deficiency Assessments (Assessments) for

tax years 2007, 2008, and 2009 (fiscal tax years ending June 30, 2008, June 30, 2009, and

June 30, 2010). Defendant's assessments were issued September 18, 2012. (Ptf's Compl at 3, 5,

7.) Trial was held in Salem Oregon June 10, 2013, and June 11, 2013. Plaintiff was represented

by Ron Roberts (Ron)[1], CEO of Electronics International, Inc., who testified on Plaintiff's

behalf. Defendant was represented by Gary Visser, Auditor, Oregon Department of Revenue.

Plaintiff's Exhibits 1-32 were admitted without objection. Defendant's Exhibits A-N

were admitted without objection.[2]

## I. STATEMENT OF FACTS

Ron testified that Plaintiff is in the business of making small engine airplane parts.

Plaintiff has been in operation for over 30 years. (*See* Def's Ex D at 37.) Ron and Maryann

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recited facts and references to two sets of individuals with the same last name, Roberts and Speed, respectively. To avoid confusion, the court will use the first name of the individual being referenced.

[2] Neither party was represented by counsel at trial, and there was no indication or representation that the representatives who appeared were trained in the law or familiar with the rules of evidence. However, because all exhibits were exchanged with the opposing party prior to trial, and neither objected to the other's exhibits relied on (or at least referred to) at trial, the court received all the exhibits submitted.

Roberts (Maryann) operated in a number of roles for Plaintiff. They were the corporation's sole shareholders, two of four members of its board of directors (Board), and two of its top executive officers. (*See* Ptf's Ex 5 at 2, Ex 21.)[3] Ron testified that he and Maryann continued to function in those capacities as of the date of trial. The Board's other members include Mac Speed (Mac) and Tyler Speed (Tyler). Both Mac and Tyler were non-shareholder members of the Board. (*See* Ptf's Ex 5 at 2.)

According to Ron's testimony and certain documentary evidence, the Board held frequent special meetings and subcommittee meetings on evenings and weekends. (*See* Ptf's Ex 21.) Those meetings generally occurred approximately two times per week. (*See id.*) In those meetings, which Ron characterized during trial as forward-looking or visionary, the board members who were present discussed and worked on research and development ideas. Ron presented what he described as "engineering notes, design[s] and concepts generated during the Director's Meetings." (Ptf's Ex 22 at 1.)

In recognition of the time served for these meetings, the Board passed a resolution allowing the corporation to compensate Ron and Maryann for performing services or attending meetings as directors. (Ptf's Ex 20 at 1.) That resolution is signed by Ron and Maryann, who for all intents and purposes own and control the corporation. (*Id.* at 2.) The other Board members received no such consideration for their services to the corporation. (*See id.* at 1-2.) Ron testified at trial about the special meetings held by the full Board or subcommittees, and presented notes he testified were generated during those meetings. (*See* Ptf's Exs 21-22.) Plaintiff, however, did not present evidence describing the scope of employment of a director or an executive officer.

---

[3] Plaintiff's Exhibit 5 contains two pages labeled as page 1, the court's references to Exhibit 5 are to the pages are they are labeled by Plaintiff.

According to the testimony and documentary evidence, the compensation was to be tracked through an account labeled "R&M Income."[4] (Ptf's Exs 20-21.) Referring to one of Plaintiff's exhibits, Ron testified that the compensation took to forms; direct payment by corporate check, and payment of certain of Ron and Maryann's personal credit card debts. (Ptf's Ex 20.) The minutes state that the "R&M Income" account was created to "provide[] a clear and accurate accounting record for the compensation provided to Ron and Maryann Roberts for these activities." (Ptf's Ex 20 at 1.) Ron testified that Plaintiff paid himself and Maryann for their work as Directors during the weekly special and subcommittee meetings using a combination of two methods. Plaintiff started by paying for personal debts incurred by Ron and Maryann on their personal credit card, and then the corporation paid the balance due for Director's Fees by corporate check. (Ptf's Ex 20 at 1.) Plaintiff's evidence indicates hourly calculations were made on a quarterly basis despite checks being paid monthly. (*See* Ptf's Ex 21.) Ron and Maryann split the payments equally. (*See* Ptf's Ex 25 at 1-2.)

Ron and Maryann also used their personal credit card for Plaintiff's business. (*See* Ptf's Exs 2-4.) Instead of separately reimbursing the two from appropriate ledgers, the corporation opted to reimburse Ron and Maryann through the R&M Income account by paying off the entire balance of their personal credit card. Ron testified that the payment of the entire balance every month comprised both reimbursement of business expenses and small payments towards Director's Fees. During Defendant's audit of Plaintiff, the parties agreed on the total value of reimbursements. (Ptf's Ex 8 at 1.) Defendant disputes the classification of the non-reimbursement amounts recorded in the R&M Income account that Plaintiff identified as payments of Director's Fees. (Compl at 11.)

---

[4] Plaintiff's exhibits appear to refer to "R&M Income" and "M&R Compensation" interchangeably; the court will use the term "R&M Income" to avoid confusion. (*See* Ptf's Exs 20-21.)

## II.  ANALYSIS

The issue in this case is whether certain payments Plaintiff made to corporate shareholder directors for the tax years ending June 30, 2008, June 30, 2009, and June 30, 2010, were amounts properly deductible as compensation for services and therefore valid corporate expenses, or if they were nondeductible constructive dividends as opposed to deductible director's fees. Plaintiff contends that the disputed payments were compensation for services rendered by Ron and Maryann in their capacity as directors and as such constitute deductible director's fees. Defendant, on the other hand, argues that the disputed payments are in reality constructive dividends paid to the two shareholders, Ron and Maryann.

Oregon adopts the portions of the Internal Revenue Code (IRC) that pertain to the determination of taxable income of corporate taxpayers. ORS 317.013.[5] A corporation is allowed to deduct ordinary and necessary business expenses. IRC § 162. Amounts paid to employees for the services they perform are generally an ordinary and necessary business expense. The payments must be reasonable, and made for services actually rendered or performed. Treas Reg § 1.162-7 (1960). Plaintiff bears the burden of proof and must establish its case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

The first question the court will address is whether services were actually rendered. Treasury Regulation section 1.162-7(b)(1) (1960) states, "[a]ny amount paid in the form of

---

[5] All references to the Oregon Revised Statutes (ORS) are to the 2007 version applicable to tax years 2007 and 2008 and contains no material differences to the relevant statutes compared to the 2009 version.

compensation, but not in fact as the purchase price of services, is not deductible. An ostensible salary paid by a corporation may be a distribution of a dividend on stock." Here, the consideration is whether Ron and Maryann's meetings outside of the working day constitute director work and not a continuation of their normal work as executives of the corporation.

The court is not persuaded that the meetings Plaintiff contends Ron and Maryann attended fall within their duties in their capacity as directors rather than as executive officers or employees. Plaintiff did not present job descriptions for either position (officers or directors). Nothing in the evidence presented suggests that the research and development topics Plaintiff presented as evidence of director work actually fell under the scope of work as a director rather than an executive officer.[6]

Additionally, Plaintiff did not present any evidence of dividends paid by the corporation. The lack of dividends, "suggests that purported compensation payments may be disguised dividends." *B & D Foundations, Inc, v. Comm'r*, TC Memo 2001-262, WL 1168133 at *12 (2001). Ron did not claim during his trial testimony that either he or Maryann, the company's sole shareholders, were ever paid dividends during the years in dispute, nor is there any evidence dividends were distributed. The evidence submitted by both parties however clearly shows that the corporation had annual retained earnings in the order of $1 million. (*See* Ptf's Exs 5 at 4, 6 at 5, 7 at 5; Def's Ex L at 7, 23, 36.) Plaintiff argued in a letter to the department that:

> "[t]o insure [sic] the company stays viable (as it has for 32 years) it is imperative Ron and Maryann manage the business to insure [sic] the cash-on-hand does not drop to zero. * * * Considering the 2008 economy crisis and the economic
> / / /

---

[6] Furthermore, the evidence of the work that those special director meetings were for research and development are temporally inconsistent with the other evidence presented. (*See* Ptf's Ex 22.) The log of the director's meetings and topics pertains to the 2008-09 fiscal year, while the generated notes from director's special meetings are actually from the 2007-08 fiscal year. (*See* Ptf's Ex 21.)

uncertainty for the future, we felt the cash-on-hand was minimal and the payment of dividends was not appropriate."

(Def's Ex D at 37.)

The court is not persuaded by this argument because Plaintiff's actual cash-on-hand, in addition to the roughly $1 million of retained earnings, ranged from approximately $350,000 in 2007 and 2008 to $850,000 in 2009. (*See* Ptf's Exs 5 at 4, 6 at 5, 7 at 5.) Actual cash-on-hand, unlike retained earnings, is not necessarily available for payment of dividends because it is held for payment of pending, ongoing financial obligations and liabilities. According to Plaintiff's balance sheet, though, the corporation is not highly leveraged.[7] Moreover, given the fact that cash-on-hand is not available for the payment of dividends, Plaintiff's explanation about the need for cash on hand is nonresponsive and somewhat irrelevant. If anything, the explanation in Plaintiff's letter to Defendant undercuts the assertion, or suggestion, that Plaintiff lacked sufficient resources to pay dividends.

The court also examined the "Directors Meetings and Activity Log" (Log) and "[R&M Income] account ledger" (Ledger) to determine if the pay structure supports Plaintiff's claim that it paid Ron and Maryann for their work as directors. The Log provided calendar dates, indicated which meetings are subcommittee meetings, who was present, and the topic of discussion. (Ptf's Ex 21.) The Log also provided expected services payable for Ron and Maryann as directors for the 2008-09 fiscal year. (Ptf's Ex 21.) The Log split this information into quarterly digests, concluding each quarter period with a single line that lists the "minimum" hours spent over the given period, multiplied by a rate of $200 per hour in compensation. (*Id.* at 2.) The Log indicated the hours were the combined total for both Ron and Maryann. (*Id.*) Supplementary to

---

[7] Plaintiff's liabilities never exceed 60 percent of just cash-on-hand (excluding other assets, such as inventory) and go as low as 20 percent of cash-on-hand. (*See* Ptf's Exs 5 at 4, 6 at 5, 7 at 5.)

the Log, the Ledger provided a line-item description of funds moving in and out of the R&M Income account, which according to the board resolution, was created to keep track of director compensation. (Ptf's Exs 2-4, *see also* Ptf's Ex 20 at 1.) The Ledger lists payouts, often described as "R&M Payment," several times a month, but also lists straight personal expenses paid, such as credit card statements, cell phone and insurance bills, and mortgage payments. (*See* Ptf's Ex 3.)

The hourly rate is, however, not actually consistent with $200 per hour when checked against the Ledger. It fluctuates between quarterly periods. For the period beginning October 1, 2008 to December 31, 2008, the board minutes provide 29.26455 hours worked. (Ptf's Ex 21 at 3.) The Ledger shows payments totaling $10,362.93. (*See* Ptf's Ex 3 at 3-7.) The hourly rate the corporation apparently paid for this quarterly period is $354.11, which is $154 (rounded) more than the $200 rate stated in the Log. Similar inconsistencies exist for other quarters,[8] and the range varies between $200 and $354 per hour, suggesting that the payments were variable, and thus, not for services actually rendered. The evidence also only provided hours worked on a quarterly basis while the payments appear to be monthly. Plaintiff made no attempt at trial to reconcile the different calculation periods. It is unclear to the court how the payments made on a monthly basis directly relate to the hours tallied on a quarterly basis.

Even if the court accepts Plaintiff's claim of a $200 per hour rate, it is difficult to understand why Plaintiff split the alleged director fee payments evenly between Ron and Maryann, given the disparity between the two in board meeting attendance and services rendered. A quick review of the Log for July 1, 2008 to June 30, 2009, shows that on only two

---

[8] For January 1, 2009 to March 30, 2009, the ledger balance is $6,064.03, hours worked 20.4456, making the hourly rate $296.59. (*See* Ptf's Ex 21 at 4; Ptf's Ex 3 at 8-9.) For April 1, 2009 to June 30, 2009, the ledger balance is $10,113.59, the hours worked 34.664, making the hourly rate $291.76. (*See* Ptf's Ex 21 at 5; Ptf's Ex 3 at 9-11.) Over the course of the fiscal year, the total ledger balance is $41,713.67, the hours worked 173.42355, making the hourly rate $240.53.

occasions did Maryann attend a meeting that Ron did not attend, while on 24 occasions, Ron attended a meeting where Maryann was absent. (*See* Ptf's Ex 21.) Plaintiff presented no evidence to explain why the two were to be equally compensated given the apparent substantial disparity in services purportedly rendered by each as Board members. (*See* Ptf's Ex 25 at 1-2.) The only relevant evidence presented to the court is how many meetings Ron and Maryann attended, how long the meetings lasted, and the type of work allegedly done. That evidence shows Ron did the lion's share of the work.

It is also telling that the non-shareholder board members, Tyler and Mac, received no Director's Fees compensation. Board member Tyler attended two meetings where Maryann was not present and Mac attended 24 meetings where Maryann was not present. Both Tyler and Mac allegedly renders services at those board meetings.

Based on the lack of a director's job description, the unstable hourly rate calculated by the court, the even split of director compensation despite the difference in performance, and the lack of compensation for non-shareholder board members, the court is not persuaded that Ron and Maryann were paid based on actual services rendered as directors. The unstable hourly rate further suggests that the payments were mostly at the convenience of the shareholder/directors.

Defendant argues that the disputed payments are in reality constructive dividends paid to the two shareholders, Ron and Maryann. The court finds that to be the only reasonable and logical conclusion. This is so because the court has found that Plaintiff failed to establish that the disputed payments to Ron and Maryann were for director fees, and there is no argument or evidence that the payments were for wages as corporate officers. That leaves only one real option, the payments were in actuality dividends labeled by Plaintiff as director's fees which enabled Plaintiff to deduct the payments, whereas dividends are not deductible.

### III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiff did not prove by a preponderance of the evidence that the deductions it took for director's fees were for services actually rendered and not dividends for the fiscal years ending in June 30, 2008, June 30, 2009, and June 30, 2010. The court concludes the disputed payments were dividends to the two shareholders, Ron and Maryann. As such, Plaintiff may not deduct the payments. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of July 2013.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on July 31, 2013. The Court filed and entered this Decision on July 31, 2013.*